UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ASHOOK RAMSARAN,                                       :
                                                       :
                              Plaintiff,               :
                                                       :
               -v-                                     :          15-CV-10182 (JPO)
                                                       :
THOMAS ABRAHAM, SUNNY                                  :          OPINION AND ORDER
KULATHAKAL, RAM GADHAVI, APN                           :
NEWS, TEHELKA NEWS, and DNA NEWS,                      :
                                                       :
                              Defendants. :
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

        Plaintiff Ashook Ramsaran filed this action on December 31, 2015, alleging that

Defendants Thomas Abraham, Ram Gadhavi, and Sunny Kulathakal, along with APN News,

Tehelka News, and DNA News (a website owned by "Diligent Media Corporation Limited" or

"Diligent Media" (Dkt. No. 66 at 2)), injured him by making and/or publishing statements in a

series of emails, press statements, and news articles that were either libelous or libelous *per se*.

(Dkt. No. 1 ("Compl.") at 9-20.)  Two individual Defendants, Abraham and Gadhavi, have filed

motions to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6), for

failure to state a claim.  (*See* Dkt. No. 28; Dkt. No. 62.)  Abraham moves, in the alternative, for

summary judgment.  (*See* Dkt. No. 31.)   For the reasons that follow, Abraham's motion to

dismiss is granted, and his motion for summary judgment is denied as moot.  Gadhavi's motion

to dismiss is granted in part and denied in part.

        Ramsaran's claims against the other Defendants also hang in limbo.  Defendant Sunny

Kulathakal opposes the pending motion for default judgment against him, and he additionally

requests that this Court vacate the Clerk of Court's Certificate of Default against him.  (*See* Dkt.

No. 82; Dkt No. 83; Dkt. No. 27.)  Defendant DNA News has moved to dismiss for insufficient

service, per Federal Rule of Civil Procedure 12(b)(5), and lack of personal jurisdiction, under

Federal Rule of Civil Procedure 12(b)(2).  (*See* Dkt. No. 65; Dkt No. 66 at 2.)   Defendant

Tehelka News has not appeared or responded to the Complaint, and Ramsaran has not yet moved

for default judgment against it.  Ramsaran has further failed to demonstrate service of process

against APN News, despite this Court's Order to Show Cause warning that failure to do so could

result in dismissal of the claims.  (*See* Dkt. No. 40.)

For the reasons that follow, Kulathakal's request that the Court vacate the Certificate of

Default against him is granted (and Ramsaran's corollary motion for default judgment against

Kulathakal is denied); DNA News's motion to dismiss is granted; Ramsaran must file a status

update or otherwise prosecute his claims against Tehelka News; and the claims against APN

News are dismissed.

## I.    Background

The state-law claims in this action are brought in this Court pursuant to 28 U.S.C. § 1332.

There is complete diversity of citizenship between the parties and the amount in controversy

exceeds $75,000.

The facts described herein are, unless otherwise indicated, taken from Ramsaran's

Complaint, or papers appended thereto.  *See Biro v. Conde Nast*, 883 F. Supp. 2d. 441, 455

(S.D.N.Y. 2012) ("In defamation actions, [courts] typically include[] the documents containing

the allegedly defamatory statements [when considering a 12(b)(6) motion].").  These facts are

presumed true for the purposes of the 12(b)(6) motions.

The actions and allegedly offending statements concern the election and subsequent tenure of Plaintiff Ashook Ramsaran as the President of the Global Organization of People of Indian Origin ("GOPIO").

GOPIO is a registered non-profit organization founded twenty-five years ago with the mission of combatting human rights violations against people of Indian origin living outside of India.  (Compl. ¶¶ 2, 20.)  The organization is composed of nearly 100 chapters in over twenty countries and has thousands of individual members.  (*Id.* ¶ 20.)

Ramsaran has served in multiple leadership roles in the organization, including Executive Vice President.  (*Id.* ¶ 21.)  In 2014, Ramsaran ran for and was elected President of GOPIO.  (*Id.* ¶¶ 21-22.)

The election was contentious.  Defendant Thomas Abraham, one of GOPIO's founders and its first president, "sponsor[ed]" a different candidate, Defendant Sunny Kulathakal.  (*Id.* ¶¶ 21-22.)  And after Ramsaran won, Abraham and others, including Defendant Ram Gadhavi (another GOPIO member), "attempted to reverse the results of the election," in part by threatening litigation.  (*Id.* ¶ 22)

Ramsaran received a "LEGAL NOTICE FOR IMMEDIATE COMPLIANCE" ("Legal Notice"), sent and signed by Jose P. Verghese (an attorney based in India), and appended to the Complaint, on behalf of a group of individual GOPIO members.  (Dkt. No. 1-3.)  The list of individuals on whose behalf the Legal Notice was sent does not name Abraham or Gadhavi. (*Id.*) Ramsaran alleges that the Legal Notice contained misinformation and was circulated with the aim of discrediting and injuring him.  (Compl. ¶ 24.)  Norman Solovay, ostensibly serving as GOPIO's lawyer, responded to the Legal Notice.  (*Id.* ¶ 25.)  Solovay and Verghese proceeded to exchange letters.  (*Id.* ¶¶ 26-27.)

Whether Ramsaran's retaining and paying Solovay from GOPIO's coffers was proper is the subject of the some of the allegedly libelous statements by Defendants Abraham and Gadhavi in a series of emails sent by each.  (Dkt. No. 1-15; Dkt. No. 1-16.)  Specifically, according to documents appended to the Complaint, Abraham sent two emails addressed to Ramsaran, Netram Rambudhan (identified as "the former [GOPIO] Treasurer who had issued the [relevant] checks" to Solovay), and Inder Singh (described as the "Chairman" of "GOPIO International").  (Dkt. No. 1-15 at 3-5.)  Gadhavi, for his part, apparently sent eleven emails to dozens of individuals (many of whom are not identified by name or affiliation) discussing the GOPIO election and criticizing Ramsaran's conduct as President.  (Dkt. No. 1-16 at 1-2.)

A series of news articles chronicled the affair.  The articles ran in various publications, including those of some Defendants named in this action.  (Dkt. No. 1-11; Dkt. No. 1-12; Dkt. No. 1-13.)

In connection with criticism of his leadership, some individuals connected to GOPIO initiated legal action against Ramsaran in India.  (Compl. ¶ 28.)  Ramsaran filed this suit, alleging defamation by Defendants.

## II.     Claims Against Defendants Abraham and Gadhavi

### A.     Legal Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  In determining whether this

4

standard is satisfied, courts assume that all "factual allegations contained in the complaint" are true, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (citation omitted).

### B.     Defamation Cause of Action

 "Defamation is the injury to one's reputation by written expression, which is libel, or oral expression, which is slander." *Biro*, 883 F. Supp. 2d at 456 (quoting *Idema v. Wager*, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000)).  To recover in libel (the basis of Ramsaran's claims here), New York law requires that a plaintiff establish five elements: "(1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or per se actionability (defamatory on its face)." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000).  A defamatory statement is actionable only if it is made "without authorization or privilege" (a requirement that is sometimes listed as part of the elements of a defamation action).  *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009).

"Whether particular words are defamatory presents a legal question to be resolved by the court[] in the first instance," *Celle*, 209 F.3d at 177 (quoting *Aronson v. Wiersma*, 483 N.E.2d 1138, 1139 (N.Y. 1985)), as to whether the statement "exposes the plaintiff 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgraces, or . . . induces an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society," *Biro*, 883 F. Supp. 2d at 456

(alterations in original) (quoting *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 113 (2d Cir.

2005)).

"A defamation claim 'is only sufficient if it adequately identifies the purported

communication, and an indication of who made the communication, when it was made, and to

whom it was communicated.'" *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y.

2010) (quoting *Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 849 (S.D.N.Y. 2000) (internal

quotation marks omitted)).

### C.    Scope of the Claims Against Abraham and Gadhavi

Abraham and Gadhavi challenge, as a matter of law, the scope of the allegations against

them, arguing that only some alleged statements are pleaded with enough specificity to be

actionable.  *See id.*

Indeed, the only statements identified that are specifically alleged to have been made by

Abraham[1] or Gadhavi are a series of emails each sent regarding Ramsaran's election and his

conduct as President of GOPIO.[2]  (*See* Compl. ¶¶ 53, 70; Dkt. No. 1-15; Dkt. No. 1-16.)

---

[1]     The allegation that Abraham "ceased publication" of the newsletter (Compl. ¶ 54) is not actionable as libel, because the action does not consist of "statements," but rather the *failure* to put out a publication, or to make statements, and there is no argument here for defamation by implication.  *See Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37 (N.Y. App. Div. 1st Dep't 2014).

[2]     Among amorphous allegations about statements to press, drawing all inferences in Ramsaran's favor, he alleges that Gadhavi is one of the "Disgruntled Dissenters" (Compl. ¶ 14), and that "it became virtually certain . . . that Verghese was encouraged, provided information, paid and retained by Abraham in connection and collusion with Kulathakal and the 'Disgruntled Dissenters'" (*id.* ¶ 23; Dkt. No. 1-3).  But even reading these allegations as attributing additional specific statements to Abraham and Gadhavi, Ramsaran does not plead facts connecting Abraham or Gadhavi to anything contained in the offending email, and the email (appended to the Complaint and incorporated therein by reference), appears to have been written and sent by Dr. Jose P. Verghese, under "instruction from and on behalf of" about half a dozen individuals, not including Abraham or Gadhavi.  (*See* Dkt. No. 1-3 at 1.)  Ramsaran pleads no facts to connect Abraham and Gadhavi to the email.  These statements, as pleaded against Abraham and Gadhavi in particular, are therefore not actionable.

6

Abraham and Gadhavi's motions to dismiss are therefore granted, as an initial matter, to the extent the Complaint contains allegations based upon any alleged statements or actions *outside* the two series of emails appended to the Complaint.  If Ramsaran wishes to renew his claims against Abraham and Gadhavi based on alleged statements outside of these emails, he may move for leave to amend and must plead specific facts as to the statements that can be attributed to these Defendants.  *See* Fed. R. Civ. P. 15(a)(2).

The additional allegations that Gadhavi "aided, abetted, supported, and contributed" to Defendant Sunny Kulathakal's statements to various press outlets or press releases (Compl. ¶¶ 66-69), without more specifics, are not enough to state a claim for the same reasons.  *Stevens v. New York*, 691 F. Supp. 2d 392, 399 (S.D.N.Y. 2009) (finding that a plaintiff's allegation that "[u]pon information and belief, the remaining Defendants aided and abetted in the aforestated defamation by supporting it, encouraging it, and knowingly relying upon said false statements to Plaintiff's detriment" were "bare allegations" that failed to meet the Rule 12(b)(6) standard). Gadhavi is not named, mentioned, or quoted in any of the press releases or articles, and therefore his alleged connection to the statements or representations contained therein does not rise above a conclusory allegation.

With all inferences drawn in Ramsaran's favor, it is possible to read the Complaint to combine the specific emails sent by Gadhavi with the aiding and abetting allegations—that is, that Gadhavi may have aided and abetted Kulathakal's allegedly libelous statements through the *sending* of the appended emails.  But even this generous reading of the Complaint cannot survive the motion to dismiss because Gadhavi's appended emails were all sent *after* the identified press releases.  (The emails were sent beginning on January 29, 2015 (Dkt. No. 1-16), whereas the releases and articles ran from January 7, 2015, to January 24, 2015 (Compl. ¶¶ 66-69).)

Because Ramsaran does not adequately plead his claims as to other statements, the remaining discussion will address only the libel and libel *per se* claims based upon the emails attached to the Complaint, first as alleged against Abraham and next as regards Gadhavi.

### D.    Abraham's Surviving Statements

Abraham argues that the claims against him should be dismissed under either Rule 12(b)(6) or Rule 56.  Because the Court concludes that Ramsaran has failed to state a claim against Abraham, the Court does not reach the motion, in the alternative, for summary judgment.

The specific statements attributed to Abraham that form the basis of Ramsaran's claims against him consist of two emails, relating to the question of legal fees paid from GOPIO's coffers at Ramsaran's instruction.  The emails also reference Ramsaran's election.  The first email reads, in relevant part, as follows:

> I have found serious violations in the transfer to $35,000 to Soloway [sic] Practice.
>
> I am extending the time to Friday, September 4th to rectify this situation by retuning [sic] this amount to GOPIO.  If I don't hear from you by that date, I will report these violations to the Connecticut Attorney General on the following week.

(Dkt No. 1-15 at 3.)

The second email includes two paragraphs describing potential issues—first, with the recent election's having run afoul of the GOPIO bylaws; and second, with the subsequent appointment of individuals to the GOPIO governing body by "giving them made up titles."  (*Id.* at 4.)  The email goes on to describe Ramsaran's having chosen "the legal route" to deal with complaints from members, instead of "having a dialogue with them."  (*Id.*)  Finally, the message states that Ramsaran has "caused  . . . violations" of the organization's 501(c)(3) status by "transferring $37,310 to [his] lawyers," including $35,000 "to the Soloway [sic] Practice" for which he "did not obtain prior approval of the Executive Council."  (*Id.* at 4-5.)  The email

concludes by reiterating a commitment to "bring[ing] these violations to the attention of government agencies." (*Id.* at 5.)

Among other objections, Abraham argues that these statements are not actionable because of the audience to which they were disseminated. The emails are addressed, in the body text as well as the address line, to Ramsaran, Netram Rambudhan, identified as "the former [GOPIO] Treasurer who had issued the [relevant] checks" to the lawyers, and Inder Singh, described as the "Chairman" of "GOPIO International." (*Id.* at 3.) (Ramsaran, for his part, does not allege in the Complaint or suggest through incorporated materials that Abraham sent these emails to anyone besides the named recipients. While he does attempt to make these arguments in response to the summary judgment motion, such materials are not properly considered on a 12(b)(6) motion. *See, e.g.*, *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 258 (S.D.N.Y. 2008).) Specifically, because the recipients of the two emails were Ramsaran himself and two fellow GOPIO leaders, Abraham argues that the communications are protected by the common interest privilege.

Whether a communication is subject to absolute or qualified privilege is a threshold question in a defamation action and properly considered at the motion-to-dismiss stage. *See, e.g.*, *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009). This is because if a communication is either privileged or authorized, it is not actionable as defamatory. *See id.* at 411 (including, in the elements of a defamation claim, consideration of whether the statements in question were made without "authorization or privilege").

"New York affords qualified protection to defamatory 'communication[s] made by one person to another upon a subject in which both have an interest,'" so-called "common interest privilege." *Albert v. Loksen*, 239 F.3d 256, 272 (2d Cir. 2001) (alteration in original) (quoting

*Stillman v. Ford,* 22 N.Y.2d 48, 53 (1968)); *see also Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 98 (2d Cir. 2000).  "Simply stated, 'a bona fide communication made upon any subject matter in which the party communicating has an interest or duty is protected by a qualified privilege when it is made to a person having a corresponding interest or duty.'"  *Stuart v. Porcello*, 193 A.D.2d 311, 314-15 (N.Y. App. Div. 3d Dep't 1993) (internal alterations omitted) (quoting *Licitra v. Faraldo*, 130 A.D.2d 555, 555 (N.Y. App. Div. 2d Dep't. 1987)) (collecting cases).

As relevant to the case at hand, the privilege applies where the parties are "engaged in a dispute about the policy of an institution in which they all [the plaintiff, the defendant, and the audience] were deeply interested."  *Stillman*, 22 N.Y.2d at 53.  The privilege has been found to apply in circumstances precisely parallel to those presented here—for example, where a defendant, who had been elected to the Patrolmen's Benevolent Association ("PBA") Board of Directors, made statements in a letter to his constituents "criticizing plaintiff's performance as president" of the organization, specifically regarding the alleged "misappropriation of PBA funds" and potential interference with ongoing contract negotiations.  *Stuart*, 193 A.D.2d at 315. There, the communications were protected by common interest privilege because "both the author and the recipients of that letter had a common interest in the subject matter of [the] communication," specifically, the use or misuse of the organization's funds.  *Id.*; *see also Sullivan v. Conway*, 157 F.3d 1092, 1098 (7th Cir. 1998) (Posner, J.) (holding that announcements to local union members were subject to the common interest privilege because they were made "to the members of the local union, who had a vital interest in receiving candid communications . . . concerning [the subject's] administration" of the organization).

Similarly, here, Abraham, a founder of GOPIO and its former President (Compl. ¶ 3), directed his communications to two individuals (in addition to Ramsaran), both of whom are identified in the pleadings and incorporated materials as holding leadership roles at GOPIO. Thus, the author and the audience had a shared interest and responsibility in the management and governance of GOPIO, including the adherence to its bylaws and the use or misuse of its funds. Indeed, one of Abraham's allegedly offending emails begins with the preamble: "This is to bring to your attention the following issues and some suggested remedial steps," making clear that the recipients of the email were involved in correcting issues raised therein.  (Dkt. No. 1-15 at 4.)

Ramsaran counters that this qualified privilege should be dissolved based on Abraham's state of mind in drafting the emails.  Because the common interest privilege is qualified, it may be overcome in certain circumstances, including "by a showing either of 'actual' [also called 'constitutional'] malice (*i.e.*, knowledge of the statement's falsity or reckless disregard as to whether it was false) or of common-law malice," *Chandok v. Klessig*, 632 F.3d 803, 815 (2d Cir. 2011), meaning "spite or ill will," *id.* (quoting *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992)).  "The . . . difference between common-law malice and constitutional malice . . . is that the former focuses on the defendant's attitude toward the plaintiff, the latter on the defendant's attitude toward the truth."  *Konikoff*, 234 F.3d at 99.

In his Complaint, Ramsaran makes only conclusory allegations regarding Abraham's malice, either his attitude toward Ramsaran or his attitude toward the truth or falsity of the statements.  The Complaint merely states that Abraham made the statements with the "requisite degree of fault," that is, "motivated by ill will, malice, or other nefarious motive," but does not

further describe his state of mind.[3]  (Compl. ¶¶ 55, 64.)[4]  And Ramsaran's arguments in

opposition to Abraham's motion to dismiss are similarly conclusory.  (*See* Dkt. No. 35 at 9

("Plaintiff has pled sufficient facts in the complaint to show that Defendant distributed the emails

with both actual and common-law malice.").)  "Mere conclusory allegations, or charges based

upon surmise, conjecture, and suspicion are insufficient to defeat the qualified privilege."  *Fuji*

*Photo Film U.S.A., Inc.*, 669 F. Supp. 2d at 412 (quoting *Golden v. Stiso*, 279 A.D.2d 607, 608

(N.Y. App. Div. 2d Dep't 2001)); *see also Biro v. Conde Nast*, 807 F.3d 541, 545-46 (2d Cir.

2015) (defamation plaintiff must allege facts plausibly supporting inference of actual malice to

survive a motion to dismiss).

　　　To the extent that Ramsaran makes specific arguments as to Abraham's malice, he relies

on documents submitted along with his opposition brief.  (*See* Dkt. No. 33; Dkt. No. 35 at 8-9

(citing statements in and appended to the affidavit at Docket Number 33 to argue that Abraham

lacked a "good faith belief that his statements were true" and to demonstrate that Abraham

himself "voted for legal action to be taken to defend GOPIO").)[5]  On a Rule 12(b)(6) motion,

---

[3]　　　The Complaint alleges generally that Abraham "sponsor[ed] the election of
Kulathakal over Ramsaran for the presidency of GOPIO's governing entity," but does not
connect those actions, or any malice arising from the election, to the specific emails at issue.
(Compl. ¶ 13.)  Moreover, the allegations regarding Abraham's general "resent[ment]" are
alleged with regard to his own desire to exert more control over the organization, rather than as
specifically aimed at, or motivated by ill will or personal spite toward, Ramsaran.  (*Id.*)

[4]　　　Ramsaran additionally alleges that Abraham "contributed" to other press releases
"in an attempt to destroy Ramsaran's reputation," but these statements, as explained above, are
not spelled out in enough detail in order to be actionable.  (Compl. ¶ 59)

[5]　　　In contrast, neither the letter appended to and referenced in the Complaint
authorizing GOPIO to take legal action later challenged by Abraham, nor the email traffic
regarding the meeting at which the vote allegedly took place, connects Abraham to the
authorization of GOPIO's legal action or suggests that he had knowledge of it.  (*See* Compl.
¶ 27; Dkt. No. 1-5 at 2; Dkt. No. 1-10.)  The Complaint therefore does not suggest that Abraham
knew facts contrary to his representations about the procedural irregularity of GOPIO's legal
action.

however, the Court may not consider material outside the pleadings and not referenced therein. This includes affidavits submitted by the plaintiff, even where they are appended to the complaint itself, let alone when they are submitted with opposition briefing. *See Shafir v. Continuum Health Partners, Inc.*, 57 F. Supp. 3d 325, 327 (S.D.N.Y. 2014).

Because Ramsaran has failed, based on the bare and conclusory allegations contained in or incorporated into the Complaint, to defeat the common interest privilege that applies to Abraham's statements, the claims against Abraham are dismissed for failure to state a claim.

### E.    Gadhavi's Surviving Statements

Specific allegations supporting the libel and libel *per se* claims as to Gadhavi are based exclusively on messages he sent to a list of individuals, who are not named or described outside the address line of the emails.  (*See* Compl. ¶ 70; Dkt. No. 1-16.)

Gadhavi moves to dismiss, arguing in part that, as with Abraham's communications, his emails are protected by the common interest privilege.  To that end, Gadhavi represents that the communications at issue were made "to parties who had corresponding interests or duties . . . with an interest in the efficacy and reputation of GOPIO."  (Dkt. No. 63 at 12.)  While that may be the case, neither the Complaint nor the emails themselves (unlike Abraham's messages) identify the recipients of the emails by anything other than their email addresses, which are private, non-GOPIO addresses.  It is therefore not apparent that all of the recipients are GOPIO members.  In his brief in opposition, Ramsaran does not concede this point and, in fact, argues to the contrary.  (Dkt. No. 67 at 6.)  Common interest privilege therefore cannot serve as a basis on which to dismiss the action against Gadhavi at this stage, though marshaling evidence about the identities of the emails' recipients could be raised at a later stage of litigation to demonstrate that the privilege does, in fact, apply.

Regarding the substance of the communications, Ramsaran identifies several statements culled from Gadhavi's emails that he argues are libelous: a statement that Ramsaran "TOTALLY IGNORES GENERAL BODY'S RESOLUTIONS"; that Ramsaran is "HURTING GOPIO"; that he has "not presented Balance Sheets of the years of which [he] ha[s] poorly submitted Profit and Loss Accounts"; that Gadhavi "see[s] [Ramsaran] violating those documents [GOPIO bylaws] left and right"; that Ramsaran is "proving that [he is] insecure and incapable of Presidency of Gopio"; that he "should resign and save Gopio"; that he "HA[S] APPOINTED ILLEGALLY" some GOPIO officers.  (Dkt. No. 1-16.)

Gadhavi counters that at least some of these statements are not actionable because they merely express opinion.  (*See* Dkt. No. 63 at 14-18.)  "When a statement of opinion implies that it is based on unstated facts that justify the opinion, the opinion becomes an actionable mixed opinion."  *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 281 (S.D.N.Y. 2016) (internal quotation marks omitted) (quoting *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 503 (S.D.N.Y. 2012)).  "Further, if the predicate facts are disclosed but are false, such that the disparity between the stated facts and the truth would cause a reader to question the opinion's validity, the opinion may be an actionable 'defamatory opinion[].'"  *Id.* (alteration in original) (quoting *Silsdorf v. Levine*, 59 N.Y.2d 8, 15-16 (1983)).  "[A]ctionable mixed opinion[s]" are sorted from "privileged, pure opinion[s]" by determining whether, to an average person hearing the communication, there is an "implication that the speaker knows certain [unspoken] facts" that form the basis of the opinion.  *Davis v. Boeheim*, 24 N.Y.3d 262, 269 (2014) (quoting *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 290 (1986)).

New York courts use three factors to guide the inquiry into whether a statement is fact or opinion: "(1) whether the specific language in issue has a precise meaning which is readily

understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal [to] . . . readers or listeners that what is being read or heard is likely to be opinion, not fact." *Id.* at 270 (quoting *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008)).  In applying the factors, the New York Court of Appeals has "adopted a holistic approach": "'Rather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made . . . .'" *Id.* (quoting *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995)).  The New York Court of Appeals has, in fact, repeatedly "stress[ed] [its] commitment to avoiding the 'hypertechnical parsing' of written and spoken words for the purpose of identifying 'possible facts,'" insisting that "[t]he core goal . . . is to protect the individual's historic right to vindicate reputation,'" in a constitutional manner.  *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 156 (1993) (internal alterations omitted) (quoting *Immuno AG. v. Moor–Jankowski,* 77 N.Y.2d 235, 256 (1991)).

To that end, applying New York law, courts have found actionable some statements that seem at first blush to be opinion, when the context suggests the opinions are based on facts.  *See Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 152 (2d Cir. 2000) (reversing a district court's dismissal of a libel action characterizing a lawyer as an "ambulance chaser" who took only "slam dunk" cases); *Enigma Software Grp. USA, LLC*, 194 F. Supp. 3d at 283 (finding actionable, in context, the statement "[i]n my opinion SpyHunter is a dubious program with a high rate of false positives"); *Gross*, 82 N.Y.2d at 154 (reversing a finding that statements "couched in the language of hypothesis or conclusion"—including that the plaintiff "engaged in 'corrupt' conduct" and "ben[t] over backwards to help the police"—were not actionable, and

reasoning that these characterizations could be understood as based upon facts and tended to indict the plaintiff in his profession).

The statements at issue here that most naturally appear to constitute opinion—that Ramsaran "should resign and save Gopio," that he is "HURTING GOPIO," and that he is "insecure and incapable of the Presidency"—similarly appear in the context of a series of emails making specific allegations about facts that would render Ramsaran ill-suited to lead GOPIO. As such, the opinions, read in context, constitute mixed opinion and should be considered alongside the statements more obviously containing facts (discussed immediately below) for the purposes of this motion.

Considering together the remaining statements of fact and mixed opinion, the question remains whether they are actionable as a matter of law, as pleaded by Ramsaran. The statements in question discuss Ramsaran's conduct and abilities as President of GOPIO—his apparently ignoring resolutions, failing to keep or share adequate financials, violating the organization's bylaws (including by appointing officers "illegally," meaning contrary to established procedures) (Dkt. No. 1-16)—and thus tend to "impute[] fraud, dishonesty, misconduct, or unfitness in conducting one's profession," constituting libel *per se*. *Matovcik v. Times Beacon Record Newspapers*, 46 A.D.3d 636, 637 (N.Y. App. Div. 2d. Dep't 2007). (The fact that GOPIO is a non-profit organization does not limit the applicability of the doctrine. *See, e.g.*, *Giuffre v. Maxwell*, 165 F. Supp. 3d 147, 154 (S.D.N.Y. 2016) (finding that statements disparaging the plaintiff in her "professional capacity as the president of a non-profit corporation" constituted libel *per se*).) The statements—both the specific facts as to Ramsaran's conduct as President and the mixed opinions—are "mutually reinforcing," *Enigma Software Grp. USA, LLC*, 194 F. Supp. 3d at 284, and, taken together, could "reasonably imply" that Ramsaran was an ineffective and

incapable leader who was hurting the organization, *see Flamm*, 201 F.3d at 152; *Gross*, 82 N.Y.2d at 154.[6]  Ramsaran, for his part, alleges, as required, *see Enigma Software Grp. USA, LLC*, 194 F. Supp. 3d at 285, that such characterization is not only professionally damaging, but also untrue.  (*See* Compl. ¶¶ 15, 16, 25, 27, 70-71, 76.)

Accordingly, Gadhavi's motion to dismiss is denied as to these statements.

### III.   Remaining Defendants

#### A.   Sunny Kulathakal

On March 23, 2016, the Clerk of Court issued a Certificate of Default as to Sunny Kulathakal.  (*See* Dkt No. 27.)  On December 29, 2016, Ramsaran then moved for default judgment against Kulathakal, and Kulathakal filed an opposition to that motion.  (*See* Dkt. No. 83; Dkt. No. 84; Dkt. No. 82.)

Kulathakal also asks the Court to vacate the Clerk's Certificate of Default.  (*See* Dkt. No. 82.)  Ramsaran has not responded to this request specifically (except by filing his own motion for default judgment), so the arguments contained therein, which are not addressed by Ramsaran's freestanding motion for default judgment (*see* Dkt. No. 84), are deemed unopposed.

When a final default judgment has not yet been entered, a Certificate of Default can be "set aside" for "good cause."  Fed. R. Civ. P. 55(c).  The factors a court considers when deciding whether to set aside a Certificate of Default or a default judgment are the same, but "courts apply the factors more rigorously in the case of a default judgment, because the concepts of finality and litigation repose are more deeply implicated."  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d. Cir. 1993) (internal citation omitted).

---

[6]     Because disparagement in one's professional capacity constitutes libel *per se*, the Court need not address Gadhavi's further argument that Ramsaran has failed to properly plead special damages.  (*See* Dkt. No. 63 at 6.)  *See Giuffre*, 165 F. Supp. 3d at 155.

Rule 60(b)(1) provides that a court may relieve a party of a judgment due to "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). "In the default judgment context, courts consider '(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice.'" *Belizaire v. RAV Investigative & Sec. Servs., Ltd.*, 310 F.R.D. 100, 104 (S.D.N.Y. 2015) (quoting *New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005)).

The first prong, "[w]illfulness, in the context of a default, 'refer[s] to conduct that is more than merely negligent or careless.'" *Id.* (quoting *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)). Here, Kulathakal represents that service was not perfected until after the Certificate of Default had already been issued. That is, the initial summons and Complaint were addressed and delivered to Kulathakal's son in Chicago, despite the fact that Ramsaran's Complaint described Kulathakal as living in India (where he represents he does, in fact, reside). (Compl. ¶ 4; Dkt. No. 20.) In fact, Ramsaran continued to try to serve Kulathakal well into June 2016, months *after* the Certificate of Default had been issued. (Dkt. No. 78.) Moreover, Ramsaran did not file an Affidavit of Service reflecting in-person service until November 21, 2016. (*Id.*) The drawn-out and repeated attempts at service belie any suggestion that Kulathakal's delay in answering or otherwise responding the Complaint—leading to the Certificate of Default—was willful gamesmanship. To the contrary, all parties, including Ramsaran, appear to have been in the realm of negligence or carelessness in their actions.

Second, "[i]n order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a

18

complete defense." *Belizaire*, 310 F.R.D. at 105 (quoting *McNulty*, 137 F.3d at 740).  Here, Kulathakal lays out a defense, similar to the prevailing and partially prevailing motions to dismiss discussed above, regarding Ramsaran's failure to plead essential elements of his claim. And Kulathakal further provides an affidavit, laying out facts that would provide a complete defense to the claims levied against him—including representations that he did not make statements to the press and that any attributable statements contained true facts.  (*See* Dkt. No. 81 at 5.)  Given that parallel arguments as to Ramsaran's pleadings have already proved successful, at least in part, for Abraham and Gadhavi, Kulathakal has done enough to demonstrate a colorable defense.

Finally, a court must consider "whether and to what extent, vacating the default judgment will prejudice the non-defaulting party." *Green*, 420 F.3d at 110.  "[D]elay alone" is not enough; "[r]ather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Belizaire,* 310 F.R.D. at 106 (internal quotation marks omitted) (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983))*.*  Here, discovery has not yet begun, as the other Defendants have moved to dismiss, have not responded to the Complaint, or have not yet been served.  As a result, there is no basis for a finding of prejudice beyond ordinary delay that would counsel against vacating the Certificate of Default.

Taking the three factors together, the Court concludes that all the factors support vacating the Certificate of Default, especially considering the more forgiving standard due in the absence of a final entry of default judgment.  The Certificate of Default as to Kulathakal at Docket Number 27 is therefore vacated, and Ramsaran's motion for default judgment is accordingly denied.

Kulathakal is hereby directed to answer or otherwise respond to the Complaint by April 30, 2017.

### B.    DNA News

Defendant DNA News argues that service was not proper and that Ramsaran's claims against it should, as a result, be dismissed under Federal Rule of Civil Procedure 12(b)(5).  (Dkt. No. 66.)  Ramsaran has not responded to this motion within the allotted time, so the Court deems it unopposed.

Weighing a motion under Rule 12(b)(5), a court may properly consider facts outside the four corners of the complaint, and the burden is on the plaintiff to show the adequacy of service. *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016).

DNA News is an Indian entity with its principal place of business in India.  (*See* Compl. ¶ 8.)  "Under Federal Rule of Civil Procedure 4(f)(1), a foreign defendant—including a foreign corporation, Fed. R. Civ. P. 4(h)—may be served 'by any internationally agreed means of service that is reasonably calculated to give notice.'"  *Melissa & Doug, LLC v. LTD Commodities, LLC*, No. 15 Civ. 8085, 2016 WL 4367975, at *2 (S.D.N.Y. Aug. 15, 2016) (quoting Fed. R. Civ. P. 4(f)).  "Such means include 'those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents' (the 'Hague Convention')."  *Id.* (quoting Fed. R. Civ. P. 4(f)(1)).  India is a signatory to the Hague Convention.  *See Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011).

However, because the Government of India "objected to the means of service described in Article X," which includes service by certified mail, *see id.*, legal documents are properly served in India by submitting a copy of the complaint and summons to the Central Authority of Indian, which, in turn, serves the documents according to Indian law, *see Tuckerbrook*

*Alternative Investments, LP v. Banerjee*, 754 F. Supp. 2d 177, 181-82 (D. Mass. 2010) (citing Hague Convention, Arts. 3-5).

But here, Ramsaran attempted to serve DNA News directly, by hand and by mail.  (Dkt. No. 43.)  As such, service is defective.  "[D]istrict courts cannot circumvent the Hague Convention at whim and authorize alternative service when the foreign state has affirmatively objected to the type of service requested."  *Advanced Aerofoil Techs., AG v. Todaro*, No. 11 Civ. 9505, 2012 WL 299959, at *2 (S.D.N.Y. Jan. 31, 2012).

The claims against DNA News must therefore be dismissed under Rule 12(b)(5).  *See Burda Media, Inc. v. Blumenberg*, No. 97 Civ. 7167, 2004 WL 1110419, at *5 (S.D.N.Y. May 18, 2004) ("The procedural requirement of effective service of process must be satisfied before a Court can assert personal jurisdiction over a defendant." (quoting *Local 78, Asbestos, Lead & Hazardous Waste Laborers, AFL–CIO v. Termon Construction, Inc.*, 01 Civ. 5589, 2003 WL 22052872, at *2 (S.D.N.Y. Sept. 2, 2003)), *aff'd sub nom. Burda Media, Inc. v. Viertel*, 417 F.3d 292 (2d Cir. 2005).

The Court need not reach DNA News's additional grounds for dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction.

**C.    Tehelka News**

Tehelka News was apparently served on April 10, 2016, following an Order from this Court regarding Ramsaran's failure to effectuate service in a timely manner.  (Dkt. No. 42; Dkt. No. 40.)  Tehelka News has not, however, filed an appearance with this Court, or answered or otherwise responded to the Complaint.

Ramsaran is directed to notify the Court whether he intends to move for default judgment against Tehelka News, or if he has received any communication from that Defendant or its

counsel regarding their response to the Complaint.  If Ramsaran fails by April 20, 2017, to file a

letter concerning the status of the claims against Tehelka News, those claims may be dismissed

for failure to prosecute.

      **D.**    **APN News**

     APN News was ostensibly served in Australia, though no proof of service was submitted

to the Court (following assurances by Ramsaran that service would be complete by June 30,

2016 (Dkt. No. 44 at 2)).  Ramsaran subsequently requested an amended summons, but failed to

file any affidavit confirming service.  (*See* Dkt. No. 44; Dkt. No. 72.)  Pursuant to this Court's

Order of May 5, 2016, the claims against APN are hereby dismissed.  (Dkt. No. 40.)

**IV.**    **Conclusion**

     For the foregoing reasons, Defendant Abraham's motion to dismiss is GRANTED, and

his motion, in the alternative, for summary judgment is DENIED AS MOOT.  Defendant

Gadhavi's motion to dismiss is GRANTED IN PART and DENIED IN PART.  The motion for

default judgment against Kulathakal is DENIED, and Kulathakal's request to vacate the

Certificate of Default against him is GRANTED.  DNA News's motion to dismiss is also

GRANTED.  The claims against APN News are hereby dismissed for failure to prosecute.

     Accordingly, the Clerk of Court is directed to close the motions at Docket Numbers 28,

62, 65, and 83.

     SO ORDERED.

Dated: March 30, 2017
      New York, New York

                             J. PAUL OETKEN
                        United States District Judge